UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LARRY DARNELL COBB

                    Plaintiff,

        v.                                        Case No. 24-cv-241-pp

DR. JOSEPH MCLEAN, *et al.*,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Larry Darnell Cobb, who was incarcerated at Milwaukee Secure Detention Facility (MSDF) at the time of the events described in the complaint and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

I.      **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

Because the plaintiff was not incarcerated when he filed his complaint, the Prison Litigation Reform Act does not apply to this case. The court evaluates the plaintiff's request to proceed without prepaying the filing fee under 28 U.S.C. §1915(a).

In the plaintiff's motion to proceed without prepaying the filing fee, he says he owns no property or assets and works only part-time "with an income

of less than $900 every 2 weeks." Dkt. No. 2 at 1. He says he pays $1,510 monthly for "housing," so "trying to afford the payment of the filing fee at this time would cause a financial burden to the plaintiff." Id. He says that he "does vow to cover the fee as soon as funds become available." Id. at 2.

The civil case filing fee is $405 (including a $55 administrative fee that plaintiffs who are granted leave to proceed without prepaying the filing fee do not have to pay). The plaintiff's only stated source of income is part-time work, which provides him approximately $1,800 per month. According to the plaintiff, nearly all that income goes towards his $1,510 monthly housing payment. The court concludes that it would impose a significant financial hardship on the plaintiff to require him to pay the $405 filing fee. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the $350 filing fee over time as he is able.

## II.    Screening the Complaint

### A.    Federal Screening Standard

When a plaintiff asks to proceed without prepaying the filing fee, the court "shall dismiss the case at any time if the court determines that—(A) the allegation of poverty is untrue; or (B) (i) the action or appeal—is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2). That means the court must "screen" the plaintiff's complaint to determine whether it should dismiss the complaint for any of those reasons.

2

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Drs. Joseph McLean and Dmitriy Chester, Nurses Katie Kropidlowski and Jennifer Vaughn, Correctional Officers David Firkus and McWilliams, Sergeant Quianna McBride and Kesha Packer. Dkt. No. 1 at ¶¶2–9. All defendants were MSDF employees at the time of the alleged events. Id. The complaint names all defendants in their individual and official capacities. Id. at ¶10.

The plaintiff previously filed two other §1983 complaints about the same events he describes in this case. See Cobb v. Chester, et al., Case No. 19-cv-45-pp; Cobb v. McLean, Case No. 21-cv-424-wed. This court dismissed his 2019 lawsuit after determining that the plaintiff had failed to exhaust his administrative remedies before bringing his complaint. Case No. 19-cv-45, Dkt. No. 62, available at 2020 WL 5716055 (E.D. Wis. Sept. 24, 2020).[1] He filed suit again about six months later, and this court screened the complaint and allowed him to proceed on federal claims. Case No. 21-cv-424, Dkt. No. 5. Magistrate Judge William E. Duffin, to whom the court reassigned the case on consent of the parties, ultimately dismissed the complaint without prejudice after finding that the plaintiff still had not exhausted his administrative remedies. Id., Dkt. No. 56, available at 2023 WL 8238978 (E.D. Wis. Nov. 28,

---

[1] The caption for this decision says Gibson v. Chester because the plaintiff filed his previous cases under his alias, "Larry Darnell Gibson." After it entered judgment, the court ordered the clerk to update the docket in Case No. 19-cv-45. Case No. 19-cv-45, Dkt. No. 73.

2023). The complaint does not mention these previous lawsuits and does not state whether the plaintiff has since exhausted his administrative remedies.

The complaint alleges that on March 5, 2018, the plaintiff was transferred from Milwaukee County Jail to MSDF "under the mistaken identity of Larry D. Gibson." Dkt. No. 1 at ¶11. The plaintiff had prescriptions for treatment of his seizure disorder, and the jail sent with the plaintiff "instructions . . . in respect to his seizure disorder." Id. He says Drs. Chester and McLean deprived him of his epilepsy medication Levetiracetam for thirty days, from March 5 through April 5, 2018. Id. at ¶12. He alleges that on April 5, 2018, because he did not have his medication he had a severe seizure, causing him to hit his head and suffer a laceration that "had to be glued/repaired." Id. The plaintiff also aggravated an existing back injury and had to receive epidural injections for his pain, but they did not help. Id. He says he also experienced anger spells, suicidal thoughts, "extreme headaches" and difficulty breathing. Id.

The plaintiff alleges that Dr. Chester knew that the plaintiff needed the seizure medication but failed to provide it. Id. at ¶13. He alleges that on March 6, 2018, Chester time-stamped progress notes explaining that the plaintiff had a "seizure disorder/history," yet the plaintiff did not receive his medication. Id. The plaintiff alleges that on December 14, 2016, before he was admitted to MSDF, Chester signed a progress note recounting that the plaintiff had had a seizure only three weeks earlier. Id. The plaintiff says his medical records

5

document "his seizure condition and medication needs," yet he still did not receive medication at MSDF. Id.

The plaintiff says he met with Dr. McLean twice, the first time for a physical on March 9, 2018. Id. at ¶15. McLean discussed the plaintiff's seizure medication and noted that the medication "would be sent to his unit." Id. The plaintiff alleges that during their "second encounter," McLean had the plaintiff fill out a proper medical authorization form correcting the "mistaken identity" and providing the plaintiff's correct name and identification number. Id. But the plaintiff still did not receive his medication. Id. He alleges that McLean knew about his medical history and need for medication at MSDF but failed "to ensure said medication was being administered to the plaintiff." Id. at ¶17.

The complaint alleges that on April 5, 2018, after thirty days without receiving seizure medication, Nurse Kropidlowski was assigned to the plaintiff's housing unit. Id. at ¶18. The nurse noticed the plaintiff's "blood shot eyes," and he told her he had a bad headache and could not breathe. Id. Kropidlowski allegedly did not treat him, send him to doctor or take his vitals; instead she told him "to go lie down for a while." Id. The plaintiff went back to his cell "and witnessed a severe seizure" that left him "unresponsive in a pool of blood." Id. He claims that Kropidlowski failed to provide him "emergency medical help and left him to suffer" even after he told her about his symptoms. Id.

The plaintiff alleges that when he began to experience symptoms of a seizure, he pressed the emergency call button for help. Id. at ¶19. Officer Firkus responded and asked what his medical emergency was. Id. The plaintiff

said his head hurt and he could not breathe, but Firkus allegedly did not call for help and told the plaintiff "to fill out a blue slip, which is a Health Service Request Form." Id. The plaintiff pressed the emergency call button again, but Firkus "ignored the plaintiff's calls, letting him suffer." Id. The plaintiff says that Sergeant McBride "was in the bubble with C.O. Firkus" and heard his cries for medical attention. Id. He says she told him she would call for a nurse but never did. Id. The plaintiff claims that Firkus and McBride "were angry with him" for pressing the emergency call button and "making claims of being wrongfully incarcerated." Id.

The plaintiff alleges that after he lost consciousness, Nurse Vaughn "came to his assistance and noted that blood was everywhere, and that the plaintiff was unresponsive." Id. at ¶20. She unsuccessfully tried to stop the bleeding from his forehead. Id. The plaintiff alleges that Vaughn then "waited over 15-30 minutes before allowing the paramedics . . . to transport [him] to the hospital." Id. He says she left him "to sit disoriented and bleeding from his head." Id.

When the plaintiff returned from the hospital to MSDF, staff moved him from an upper bunk to a lower bunk. Id. at ¶21. He alleges that "he had another mental health breakdown" about Firkus and McBride not responding to his emergency calls. Id. He says the defendants did not provide him an icepack or "check[] on his welfare at all." Id. The plaintiff alleges that instead of being provided help, he was handcuffed, put in a wheelchair "and hauled to 'observation' 'where he was left alone to suffer.'" Id.

7

The plaintiff says he "began filing complaints" when he was released from observation. Id. at ¶22. He alleges that Sergeant McBride "began a retaliation campaign to deter [the plaintiff] from speaking out and to stop him from filing complaints against named defendants." Id. He says that on April 16, 2018, he was moved to a mental health unit where Officer Firkus worked. Id. at ¶23. The plaintiff told Firkus and McBride "of his dissatisfaction with their failure to get him timely medical help." Id. He says that Firkus apologized, but that McBride "was angered further by the plaintiff's loud outbursts and claims." Id.

On April 20, 2018, McBride moved the plaintiff to a lower tier, lower bunk per a medical restriction. Id. at ¶24. But a week later, she "suddenly" moved him to her housing unit and put him "in cell 19 as punishment." Id. The plaintiff says that cell 19 "has a brick wall in front of it preventing an inmate from seeing what time it is outside the cell, know what day it is, view the television, or see people in the dayroom." Id. He remained in cell 19 until May 9, 2018, when he was moved to cell 23 in the back of the housing unit. Id. at ¶25. The plaintiff alleges that McBride also gave him a cellmate who was ill and "could not stop spitting up mucus in the room." Id. The plaintiff complained to McBride, who did nothing. Id. The plaintiff eventually fell ill and asked to be moved to another cell. Id. McBride allegedly "instructed the plaintiff to refuse to lock back in the cell, which was a way he could be transferred away from Sgt. McBride's supervision." Id. He says he did so and was punished and "subjected to worse conditions by being placed in solitary confinement." Id.

On May 29, 2018, the plaintiff was released from solitary confinement and returned to McBride's unit and to cell 23. Id. at ¶26. The plaintiff alleges that he "was put on the cell floor in a boat for week(s) despite there being other rooms available." Id. He says his new cellmate had an infection "and was urinating blood in the same spot where the plaintiff was forced to sleep, next to the toilet where there was blood on it, and on the floor." Id. He says staff gave him no disinfectant spray or sanitizing items. Id. The plaintiff again complained to McBride, accompanied by his cellmate to whom a nurse had given a cup to urinate in. Id. The plaintiff says the nurse refused to take the cup, "which was full of blood" and he and his cellmate were left with it. Id.

The plaintiff says he argued with McBride and Officer McWilliams about keeping the cup of urine, which made him feel "humiliated, afraid, unsafe, and devalued as a human being." Id. at ¶27. He says McBride and McWilliams exposed him "to a heighten [*sic*] risk of potentially contracting an infectious disease" by not properly disposing of his cellmate's urine and cleaning their cell. Id. He says they also failed to contact medical staff about the nurse who refused to take the urine cup. Id. McWilliams told the plaintiff to go back to his cell, which the plaintiff reiterates was contaminated and "blood-infested." Id. at ¶28. He claims that McWilliams "sided with Sgt. McBride retaliation against him because they are friends and coworkers." Id. He suggests that McBride and McWilliams "were accustomed and/or conditioned to follow bad methods used to mishandle patients-inmates on the mental health unit." Id.

On June 11, 2018, McBride moved the plaintiff back to the cell where he had suffered the seizure on April 5, 2018. Id. at ¶30. He says being housed there caused him to "relive the severely traumatizing incidents all over again." Id. He alleges that McBride played loud music over the intercom and kept the plaintiff locked in his cell when he had visitors, reducing their visit time from thirty minutes to ten minutes. Id. The plaintiff complained about his reduced visitor time and was moved back to cell 19 (he does not say who moved him), where he previously had difficulty living. Id.

The plaintiff alleges that on June 26, 2018, McBride again placed him in cell 19 and removed his lower bunk restriction "as punishment for complaining about his mistreatment" and in defiance of his doctors' orders. Id. at ¶31. The plaintiff says he "suffered more mental episodes" in cell 19 and was placed back on observation status. Id. On July 2, 2018, the plaintiff was released from observation and again returned to McBride's unit, where McBride again put him in cell 19 and assigned him a top bunk. Id. at ¶32. The plaintiff alleges that McBride was punishing him "for remaining vocal about the debilitating injuries he sustained on March 5th 2018 on her watch." Id. The plaintiff alleges that on July 16, 2018, "when Sgt. McBride returned back to work," he was no longer in cell 19 "after he suffered episodes while she was gone," and staff had moved him to a lower bunk in another cell. Id. at ¶33. He says McBride "was upset" and "immediately . . . put him into cell no. 19, again, as punishment." Id.

On September 10, 2018, the plaintiff was placed back on observation status "by unknown staff." Id. at ¶34. He says that the next day, he "was moved back" to McBride's unit and was placed in cell 1, where there is a brick wall like in cell 19. Id. Unspecified staff moved a new cellmate into the cell with the plaintiff. Id. This cellmate did not have a name tag and the plaintiff does not know his identity. Id. The cellmate told him "he was an ex-sergeant from Fox Lake prison who was convicted of raping inmates." Id. The plaintiff says he did not sleep for days and felt unsafe. Id. He complained to McBride and asked to be moved. Id. He says he told her what the cellmate had said about raping other incarcerated persons, and McBride ignored him "likely knowing the cell mate was indeed a convicted rapist of inmates." Id.

On October 4, 2018, McBride moved the plaintiff into cell 15, where the water did not work. Id. at ¶36. The plaintiff told McBride, who said she would put in a work order; but she did not, and no one fixed the water. Id. When the plaintiff left MSDF on October 12, 2018, the water still was not working. Id. He says that on October 11, 2018, an unknown officer (who is not a defendant) let him out of his cell to get water because he was severely dehydrated. Id. at ¶37. He asserts that McBride "felt threatened" by his consistent complaining, which he says put her job "in jeopardy." Id. The plaintiff alleges that the more he "complained the worse his conditions became." Id.

The plaintiff alleges that MSDF complaint examiner Kesha Packer "overlooked [his] need for medical help when he wrote her complaining" about his treatment from the other defendants. Id. at ¶40. He alleges that Packer

failed or refused to investigate his complaints, "disregarded and ignored" his complaints about his fall on April 5, 2018, and "searched for ways to deny Plaintiff access to the complaint system." Id. He says that Packer rejected his complaints or letters that were not written "on proper/updated institution forms." Id. But the plaintiff says staff "deprived [him] of access to valid complaint forms." Id. He says Packer denied his "request for help because the complaints/letters were against her friend(s) and coworker(s)." Id.

The plaintiff asserts claims of deliberate indifference and retaliation under federal law and claims of negligence under state law. Dkt. No. 1 at 13. He says that the defendants' "policies, practices, acts, and/or omissions constituted deliberate indifference to [his] serious health care . . . and violated the cruel and unusual punishment clause of the Eighth Amendment." Id. He seeks compensatory and punitive damages "in an amount to be determined at a trial of this matter." Id. at 14. He also says he "wants to see some change" in how MSDF staff treats incarcerated persons with mental health problems. Id.

C.   Analysis

The complaint raises several potential claims. The court will address each, categorized by the law under which the plaintiff seeks to proceed.

1.   *Eighth Amendment*

The complaint alleges that Drs. Chester and McLean failed to provide the plaintiff seizure medication, which led him to suffer a severe seizure. He says that Nurses Kropidlowski and Vaughn failed to treat him immediately before or after his seizure. The court analyzes these allegations under the Eighth

Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see Estelle, 429 U.S. at 103. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). Neither negligence nor gross negligence will support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

A delay in treating the plaintiff's medical condition, even if it was not life threatening, "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). The more serious the condition, and the easier it is to treat,

the less of a delay the plaintiff must show to demonstrate that the defendant violated his rights. Id. (citing McGowan, 612 F.3d at 640). In certain circumstances, "even brief, unexplained delays in treatment may constitute deliberate indifference." Lewis v. McLean, 864 F.3d 556, 563 (7th Cir. 2017) (quotation omitted).

For the same reasons it explained in the plaintiff's previous case about the same events, the court finds that his allegations state an Eighth Amendment claim against Drs. Chester and McLean. See Case No. 21-cv-424, Dkt. No. 5 at 13–14. The plaintiff's allegations that he has epilepsy satisfy the objective element. Id. (citing Reed v. McBride, 178 F.3d 849, 853 (7th Cir. 1999); Hudson v. McHugh, 148 F.3d 859, 863 (7th Cir. 1998)). And his allegations that Drs. Chester and McLean both were aware of his epilepsy but failed or refused to provide him his medication that they knew he needed to control it satisfy the subjective component. The plaintiff may proceed on this claim against the doctors.

The plaintiff may not proceed on Eighth Amendment claims against Nurses Kropidlowski and Vaughn. As the court explained in the previous order, the plaintiff's allegations suggest only that Kropidlowski "could have done more at the time," not "that she was aware of 'a substantial risk of serious harm to' him and 'then disregard[ed] that risk.'" Id. at 14 (quoting Perez, 792 F.3d at 776). For the same reasons the court previously explained, the plaintiff's allegations suggest that Kropidlowski was, at most, "negligent (perhaps grossly negligent), which does not violate the Constitution." Id. at 15. Similarly, the

plaintiff alleges that Vaughn treated him immediately after his seizure, attempted to stop his bleeding and told him not to try and stand. He alleges that her delay in allowing the paramedics to treat him violated his Eighth Amendment rights. But as the court previously explained, "[the plaintiff] does not allege that the delay worsened his condition or furthered his injury. Because she treated the plaintiff's head wound immediately after his seizure, the court cannot classify Vaughn's actions as indifferent." Id. The plaintiff's allegations suggest that Vaughn "may have been negligent. They do not suggest she was deliberately indifferent to the plaintiff's medical condition." Id. The plaintiff does not state an Eighth Amendment claim against Kropidlowski or Vaughn.

The plaintiff next alleges that Officer Firkus and Sergeant McBride failed to respond properly to his seizure and provide him immediate emergency treatment. The plaintiff says he pressed the emergency call button in his cell when he experienced symptoms of a seizure, and Firkus and McBride answered but neither officer called for medical help. He alleges that Firkus told the plaintiff to fill out a request for health services. As the court explained in the previous case, although they are not medical professionals, these defendants may be held liable under the Eighth Amendment for disregarding the plaintiff's serious medical needs. Id. at 16 (citing Estelle, 429 U.S. at 104; and Farmer, 511 U.S. at 834). For the reasons explained in that order, the court again finds that the plaintiff's allegations satisfy both elements of a claim of deliberate

indifference. Id. at 16–17. The court will allow the plaintiff to proceed on this claim against Firkus and McBride.

The plaintiff newly alleges that Officer McWilliams and Sergeant McBride were deliberately indifferent to a risk to his health by housing him with a sick cellmate who was urinating blood that contaminated and "infested" his cell. The court also analyzes these allegations regarding the conditions of his confinement under the Eighth Amendment. Under the Eighth Amendment, a state may not subject incarcerated persons "to conditions of confinement amounting to cruel and unusual punishment." Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Rhodes v. Chapman, 452 U.S. 337, 345–47 (1981)). The Supreme Court has clarified, however, that only "extreme deprivations" will amount to cruel and unusual conditions of confinement. Id. (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The court must judge the alleged conditions "in accordance with contemporary standards of decency." Id. (citing Hudson, 503 U.S. at 8, and Rhodes, 452 U.S. at 346).

The plaintiff alleges that McWilliams and McBride failed to dispose of the urine cup his cellmate had used or call medical staff to dispose of it and ordered him to remain in his contaminated cell. The plaintiff alleges that the officers refused to move him or his cellmate to another cell or provide cleaning supplies for them to use. He says he was forced to lie on the floor of his cell next to the toilet, which had his cellmate's contaminated blood on and near it. The court finds these allegations are sufficient to state an Eighth Amendment claim regarding the conditions of his confinement. See Budd v. Motley, 711

16

F.3d 840, 843 (7th Cir. 2013) (collecting cases); <u>Oswald v. Manlove</u>, No. 16-CV-991-PP, 2019 WL 464135, at *11–12 (E.D. Wis. Feb. 6, 2019). The court will allow the plaintiff to proceed on this claim against McWilliams and McBride.

The plaintiff next alleges that Packer intentionally rejected his institutional complaints about his treatment before and after his seizure and failed to investigate his complaints against McBride and other staff. As the court explained in the previous case, incarcerated persons do not have a substantive right to file grievances, "so the alleged mishandling of [an incarcerated person's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Case No. 21-cv-424, Dkt. No. 5 at 17 (citing <u>Owens v. Hinsley</u>, 635 F.3d 950, 953 (7th Cir. 2011)). But also as in the previous case, the court finds that the plaintiff has stated an Eighth Amendment claim by alleging "that Packer not only denied his grievances but did so intentionally and without first investigating his allegations." <u>Id.</u> (citing <u>Burks v. Raemisch</u>, 555 F.3d 592, 595 (7th Cir. 2009); and <u>Mason v. Berres</u>, Case No. 19-cv-1103, 2021 WL 50882, at *3 (E.D. Wis. Jan. 6, 2021), <u>reconsideration denied <em>sub nom.</em></u> <u>Mason v. Clover</u>, 2021 WL 424159 (E.D. Wis. Feb. 8, 2021)). The plaintiff's allegations suggest that Packer "<em>refused</em> to do her job properly and disregarded the plaintiff's complaints" in violation of his Eighth Amendment rights. <u>Id.</u> at 18. The court will allow the plaintiff to proceed on this claim against Packer.

Case 2:24-cv-00241-PP   Filed 04/15/24   Page 17 of 23   Document 5

2. *First Amendment*

The plaintiff also claims that McBride violated his rights under the First Amendment by retaliating against him for complaining about her harsh treatment. To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." Felton v. Huibregtse, 525 F. App'x 484, 486 (7th Cir. 2013) (citing Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The court will allow the plaintiff to proceed on this claim for the reasons explained in the previous case:

> The plaintiff alleges that over a time span of six months, McBride moved him into undesirable prison cells that caused him to suffer mental distress and breakdowns, housed him with sick and contagious cellmates who spread their illnesses to him and denied his medical restriction for a lower bunk. He alleges that McBride did so after the plaintiff returned from the hospital and complained about McBride's response to the plaintiff's request for emergency treatment shortly before he suffered his seizure. Raising concerns about safety or other prison conditions is a "constitutionally protected activity." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018). Being housed in the conditions the plaintiff describes and having his medical restriction denied "would likely deter a person of ordinary firmness from continuing to engage in protected activity." Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (quotation omitted). The standard for that second element is objective, so the plaintiff's "persistence" in filing grievances and complaints about his conditions of confinement "does not undermine his claim." Id. (citing Holleman v. Zatecky, 951 F.3d 873, 880 (7th Cir. 2020)). The plaintiff's allegations satisfy the three elements of a First Amendment claim of retaliation against McBride.

Case No. 21-cv-424, Dkt. No. 5 at 20.

The plaintiff newly alleges that Officer McWilliams "sided with Sgt. McBride retaliation against him because they are friends and coworkers." Dkt.

No. 1 at ¶28. Unlike his claim against McBride, the plaintiff does not say what retaliatory actions McWilliams took, if any. He does not allege that McWilliams moved him to undesirable cells, housed him with sick cellmates or took away his lower bunk medical restriction. Nor does he allege that he ever complained about *McWilliams's* actions or that he had any interaction with McWilliams outside of the one incident involving his cellmate and the urine cup. For example, he does not allege that he filed a complaint about that incident and that McWilliams responded by housing him in harsh conditions or taking away his medical restriction. The plaintiff's mere allegation that McWilliams "sided with" McBride does not sufficiently state a claim of retaliation. The court will not allow him to proceed on a First Amendment claim against McWilliams.

### 3. *Official Capacity Claims*

The plaintiff also seeks to proceed against all defendants in their official capacities. Claims against a state actor in his official capacity represent another way to plead an action against the entity that he represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The claims against the defendants in their official capacities are construed as having been brought against the Wisconsin Department of Corrections (DOC), the agency for which they work. Id. at 165–66. Claims against the DOC are "no different from a suit against the State itself," so the court construes these claims as if brought against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66;

19

Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means the plaintiff may not proceed against the defendants in their official capacities to recover damages. See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiff also seeks injunctive relief in the form of changes to how MSDF staff treat incarcerated persons with mental health disorders. Injunctive relief is available under §1983 against state officials acting in their official capacities. See Will, 491 U.S. at 71 n.10 (citing Graham, 473 U.S. 159, 167 n.14 (1985), and Ex Parte Young, 209 U.S. 123, 159–60 (1908)). But the plaintiff no longer is incarcerated at MSDF and apparently has not been since October 2018. That means that there is no continuing violation of his federal rights that the court can enjoin. See Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985); and quoting Al–Alamin v. Gramley, 926 F.2d 680, 685 (7th Cir. 1991) ("When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers.")). And the plaintiff cannot seek injunctive relief on behalf of current or future persons incarcerated at MSDF. See Lewis v. Casey, 518 U.S. 343, 349–50 (1996); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999). Because the plaintiff has asserted no viable basis for injunctive relief, the court will dismiss his official capacity claims.

20

4. *State Law Claims*

The plaintiff also seeks to proceed on claims that the defendants violated state law when they were negligent as to his serious medical needs. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Negligence does not violate the Constitution. See Farmer, 511 U.S. at 835–36. But a plaintiff may raise a claim of negligence under state law. Because the facts underlying the plaintiff's claim of negligence are the same as those that underlie his Eighth Amendment claims, the court will exercise supplemental jurisdiction over the plaintiff's state law claims.

5. *Summary*

The court will allow the plaintiff to proceed on the following claims: 1) an Eighth Amendment claim that between March 5 and April 5, 2018, Drs. McLean and Chester were deliberately indifferent to the plaintiff's epilepsy by refusing to provide his seizure medication; 2) an Eighth Amendment claim that on April 5, 2018, Officer Firkus and Sergeant McBride were deliberately indifferent to the plaintiff's health and safety by refusing to call for help when he suffered his seizure; 3) an Eighth Amendment claim that on or around May 29, 2018, Officer McWilliams and Sergeant McBride were deliberately indifferent to the plaintiff's health and safety by refusing to move him to another cell or provide him cleaning supplies when he was housed with an ill cellmate in cell 23; 4) an Eighth Amendment claim against Packer for

deliberately dismissing the plaintiff's institutional complaints; 5) a First Amendment claim of retaliation against McBride; and 6) state-law claims of negligence against all defendants.

The plaintiff may not proceed on any other claims. He may proceed on these claims against the defendants in their individual capacities only and may recover only damages.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Joseph McLean, Dmitriy Chester, Katie Kropidlowski, Jennifer Vaughn, David Firkus, Correctional Officer McWilliams, Quianna McBride and Kesha Packer. Under the informal service agreement, the court **ORDERS** the defendants to respond to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities (**or who are not incarcerated**) must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 15th day of April, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.